**18-2136**

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ERNEST L. FRANCWAY, JR.

*Claimant-Appellant*

v.

ROBERT WILKIE, Secretary of Veterans Affairs,

*Respondent-Appellee*

———————————————

Appeal from the United States Court of Appeals
for Veterans Claims, Case No. 16-3738

———————————————

### APPELLANT'S PETITION FOR HEARING EN BANC
———————————————

Michael E. Joffre
William H. Milliken
**Sterne Kessler Goldstein & Fox PLLC**
1100 New York Avenue, NW
Washington, DC  20005
202.371.2600

*Counsel for Appellant*
*Ernest L. Francway, Jr.*

October 3, 2018

Case: 18-2136    Document: 14    Page: 2    Filed: 09/20/2018

FORM 9. Certificate of Interest                                            Form 9
                                                                         Rev. 10/17

### UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Francway                          v.    Wilkie

Case No. 18-2136

### CERTIFICATE OF INTEREST

Counsel for the:
☐ (petitioner) ■ (appellant) ☐ (respondent) ☐ (appellee) ☐ (amicus) ☐ (name of party)

Ernest L. Francway, Jr.

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10% or more of stock in the party |
|---|---|---|
| Ernest L. Francway, Jr. | N/A | N/A |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

4.   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court **(and who have not or will not enter an appearance in this case)** are:

Sean A. Ravin, Esq.

5.   The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47. 4(a)(5) and 47.5(b).  (The parties should attach continuation pages as necessary).

None.

| 8/20/2018 | /s/ William H. Milliken |
|---|---|
| Date | Signature of counsel |
| Please Note: All questions must be answered | William H. Milliken |
| | Printed name of counsel |
| cc: Counsel of Record | |

Reset Fields

# TABLE OF CONTENTS

RULE 35(b) STATEMENT OF COUNSEL ............................................................v

INTRODUCTION ...................................................................................................1

STATEMENT OF THE CASE...............................................................................4

ARGUMENT ..........................................................................................................5

I.     BACKGROUND ON THE PRESUMPTION OF COMPETENCY ..............5

II.    THE COURT SHOULD TAKE THIS CASE EN BANC TO OVERRULE
       *RIZZO* AND DISAVOW THE PRESUMPTION OF COMPETENCY. .......8

       A.     The presumption of competency is illegitimate because it lacks any
              statutory or regulatory basis. ...............................................................8

       B.     The presumption of competency is conceptually unsound. ................11

       C.     The presumption of competency is inconsistent with the pro-claimant
              nature of the VA adjudicatory system................................................14

CONCLUSION .....................................................................................................17

i

# TABLE OF AUTHORITIES

## Cases

*Barrett v. Nicholson*,
  466 F.3d 1038 (Fed. Cir. 2006) ........................................................ 14

*Boone v. Lightner*,
  319 U.S. 561 (1943) .......................................................................... 15

*Cox v. Nicholson*,
  20 Vet. App. 563 (2007) .................................................................. 6, 7

*Dixon v. Shinseki*,
  741 F.3d 1367 (Fed. Cir. 2014) ........................................................ 14

*Echevarria-North v. Shinseki*,
  437 F. App'x 941 (Fed. Cir. 2011) .................................................. 13

*El-Shifa Pharm. Indus. Co. v. United States*,
  378 F.3d 1346 (Fed. Cir. 2004) .......................................................... 5

*Harris v. Shinseki*,
  704 F.3d 946 (Fed. Cir. 2013) ....................................................... 6, 14

*Jensen v. Brown*,
  19 F.3d 1413 (Fed. Cir. 1994) .......................................................... 14

*Kirkendall v. Dep't of Army*,
  479 F.3d 830 (Fed. Cir. 2007) (en banc) ......................................... 15

*Kyhn v. Shinseki*,
  716 F.3d 572 (Fed. Cir. 2013) .......................................................... 11

*Mathis v. McDonald*,
  643 F. App'x 968 (Fed. Cir. 2016) ......................................... 6, 7, 11, 12

*Mathis v. McDonald*,
  834 F.3d 1347 (Fed. Cir. 2016) ....................................... 3, 12, 13, 16

*Mathis v. Shulkin*,
  137 S. Ct. 1994 (2017) ............................................................. 3, 8, 16

*Miley v. Principi,*
   366 F.3d 1343 (Fed. Cir. 2004) ................................................2, 7, 13

*O'Melveny & Myers v. F.D.I.C.,*
   512 U.S. 79 (1994)..............................................................................9, 10

*Parks v. Shinseki,*
   716 F.3d 581 (Fed. Cir. 2013) ......................................................4, 5, 6

*Rizzo v. Shinseki,*
   580 F.3d 1288 (Fed. Cir. 2009) ..................................................*passim*

*Wood v. Peake,*
   520 F.3d 1345 (Fed. Cir. 2008) ...........................................................5

**Statutes and Regulations**

38 U.S.C. § 1111 ..................................................................................... 8

38 U.S.C. § 1112 ..................................................................................... 8

38 U.S.C. § 1116 ..................................................................................... 9

38 U.S.C. § 1132 ..................................................................................... 9

38 U.S.C. § 1133 ..................................................................................... 9

38 U.S.C. § 1153 ..................................................................................... 9

38 U.S.C. § 5103A(a)..........................................................................5, 15

38 U.S.C. § 5107(b) .........................................................................15, 16

38 U.S.C. § 7261(c) ...............................................................................11

38 U.S.C. § 7292 .......................................................................................1

38 U.S.C. § 7292(c) .................................................................................8

38 U.S.C. § 7292(d)(2)........................................................................8, 10

38 C.F.R. § 3.159 .....................................................................................5

38 C.F.R. § 3.159(a)(1) ...........................................................................6

**Other Authorities**

VA Manual M21-1 .................................................................................13

## RULE 35(b) STATEMENT OF COUNSEL

Based on my professional judgment, I believe this appeal requires an answer to one or more precedent-setting questions of exceptional importance:

1.      Whether this Court should disavow the presumption of competency of medical examiners selected by the U.S. Department of Veterans Affairs, established in *Rizzo v. Shinseki*, 580 F.3d 1288 (Fed. Cir. 2009), as lacking in statutory or regulatory basis, conceptually unsound, and inconsistent with the statutorily mandated pro-claimant nature of the VA adjudicatory system.


 /s/ *Michael E. Joffre*
Michael E. Joffre

ATTORNEY OF RECORD FOR
Appellant Ernest L. Francway, Jr.

## INTRODUCTION

This case is the latest in a line of recent CAVC decisions applying the "presumption of competency," a judge-made presumption that this Court constructed nine years ago in *Rizzo v. Shinseki*, 580 F.3d 1288 (Fed. Cir. 2009). The *Rizzo* presumption essentially operates as an exception to the VA's statutory duty to assist veterans in developing their claims: it absolves the VA of any obligation to affirmatively establish a VA medical examiner's qualifications unless the veteran can supply a specific reason that the examiner is incompetent. The presumption stands as a glaring anomaly in the uniquely pro-claimant veterans-benefits scheme created by Congress, as it alone—unlike *every other rule* in the statutory regime—gives the benefit of the doubt to the *VA*, rather than to the *veteran*.

The Court should hear this case en banc and overrule the presumption of competency. *Rizzo*'s adoption of the presumption was misguided in 2009, and this Court's continued application of the presumption remains flawed today. That is so for at least three reasons.

*First*, the presumption is illegitimate because this Court lacked the power to establish it. This Court's jurisdiction under 38 U.S.C. § 7292 is limited to interpreting relevant constitutional, statutory, and regulatory provisions; the Court has no authority to establish freestanding judge-made rules of law for VA-benefits

proceedings.  The *Rizzo* Court thus lacked the statutory authority to create the presumption in the first place.  This conclusion is particularly inescapable given that Congress has legislatively established several presumptions that govern VA proceedings in Title 38 of the U.S. Code—and *every single one* favors the *veteran*, not the VA.  Had Congress intended to place the burden on veterans to show that their medical examiners lack the necessary qualifications, it surely would have said so.

*Second*, the presumption is conceptually unsound.  The rule created in *Rizzo* is premised on the presumption of regularity—the idea that courts may "presume that public officers have properly discharged their official duties."  580 F.3d at 1292 (quoting *Miley v. Principi*, 366 F.3d 1343, 1347 (Fed. Cir. 2004)).  The presumption of regularity, however, applies only to agency actions that are routine, ministerial, non-discretionary, and reliable—and not one of those adjectives applies to the VA's processes for selecting medical examiners.  Moreover, the *Rizzo* presumption is inconsistent with the principle that the burden of proving a given fact should fall on the party who can most easily access the relevant evidence.  The VA is clearly better positioned to assess the quality of its own medical examiners than are veteran claimants—many of whom are unrepresented by counsel and handicapped by serious physical and mental disabilities.

*Third*, the *Rizzo* presumption is inconsistent with the non-adversarial, pro-claimant nature of the VA-benefits system. Congress has mandated that the VA both assist veterans in developing their claims and give them the benefit of the doubt in determining whether they qualify for disability benefits. And courts, as a matter of statutory construction, resolve any ambiguities in veterans statutes in favor of the veteran claimant. The *Rizzo* presumption, however, *inhibits* claimants in their pursuit of benefits, contrary to the duty to assist; it gives the benefit of the doubt to the *VA* rather than the veteran, contrary to the benefit-of-the-doubt rule; and it *disfavors* veterans, contrary to the pro-veteran canon of statutory construction.

The continuing viability of the *Rizzo* presumption is a question of tremendous importance: it implicates the ability of thousands of veterans to obtain the disability benefits to which they are entitled under the law. *See Mathis v. Shulkin*, 137 S. Ct. 1994, 1994 (2017) (Sotomayor, J., respecting the denial of certiorari); *id.* at 1995 (Gorsuch, J., dissenting from denial of certiorari); *Mathis v. McDonald*, 834 F.3d 1347, 1353 (Fed. Cir. 2016) (Reyna, J., dissenting from denial of rehearing en banc); *id.* at 1360 (Stoll, J., dissenting from denial of rehearing en banc). En banc review is warranted so that the full Court may discard this anomalous, illegitimate, and unsound doctrine.

3

## STATEMENT OF THE CASE

This appeal concerns appellant Ernest Francway's claim for disability benefits for a lower-back injury that Mr. Francway sustained while serving in the Navy in 1969.  In 2013, the Board of Veterans Appeals remanded Mr. Francway's case to the agency and ordered that Mr. Francway be examined by an "appropriate medical specialist" to determine whether his lower-back injury was connected to his military service.  Appx4.  But contrary to the Board's remand order, the physician who ultimately examined Mr. Francway—Dr. Amy Schecter—was a general internist, rather than a specialist in orthopedics.  Appx9.

The VA ultimately denied Mr. Francway's claim, and the Board affirmed. Mr. Francway appealed to the Court of Appeals for Veterans Claims (CAVC), arguing, among other things, that Dr. Schecter was not an "appropriate medical specialist" as required by the Board's remand order.  *Id.*  The CAVC rejected this argument, relying on the "presumption of competency," which allows the CAVC to assume "that [the VA] has properly chosen a person who is qualified to provide a medical opinion in a particular case."  *Id.* (quoting *Parks v. Shinseki*, 716 F.3d 581, 585 (Fed. Cir. 2013)).  The court held that "the Board was not required to provide a statement of reasons or bases establishing the medical examiner's competence before relying on her opinion."  Appx10 (citing *Rizzo*, 580 F.3d at 1291-92).

4

Mr. Francway now petitions for hearing en banc to request that the full

Court overrule the presumption of competency as articulated in *Rizzo* and its

progeny.[2]

## ARGUMENT

## I.    BACKGROUND ON THE PRESUMPTION OF COMPETENCY

By statute, the VA has a duty "to assist a claimant in obtaining evidence

necessary to substantiate the claimant's claim" for veterans' benefits.  38 U.S.C.

§ 5103A(a).  "In the case of a claim for disability compensation," this assistance

"shall include providing a medical examination or obtaining a medical opinion

when such an examination or opinion is necessary to make a decision on the

claim."  *Id.* § 5103A(d)(1); *see Wood v. Peake*, 520 F.3d 1345, 1347-48 (Fed. Cir.

2008).

A veteran is entitled to have his claim adjudicated based on "competent

medical evidence."  *See* 38 C.F.R. § 3.159; *Parks*, 716 F.3d at 584 (VA must "rely

only on 'competent medical evidence' as defined by [38 C.F.R. §] 3.159(a)(1)").

Under the applicable regulations, "[c]ompetent medical evidence means evidence

---

[2] Mr. Francway's opening brief in this appeal is due on October 9, 2018.
Mr. Francway files this petition for hearing en banc in addition to his merits
briefing because only the en banc court may overrule the panel decision in *Rizzo*.
*See El-Shifa Pharm. Indus. Co. v. United States*, 378 F.3d 1346, 1352 (Fed. Cir.
2004).

provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions." 38 C.F.R. § 3.159(a)(1).

But, under the presumption of competency, the CAVC and this Court presume, as a matter of law, that the VA "has properly chosen a person who is qualified to provide a medical opinion in a particular case." *Parks*, 716 F.3d at 585. The veteran may rebut this presumption only by "set[ting] forth *the specific reasons* why the litigant concludes that the [examiner] is not qualified to give an opinion." *Mathis v. McDonald*, 643 F. App'x 968, 971 (Fed. Cir. 2016) (emphasis added); *see Rizzo*, 580 F.3d at 1290 (veteran "bears the burden of persuasion" to show that the examiner was not competent). In essence, the presumption of competency puts the burden on the veteran to show that a VA medical examiner *is not* qualified, rather than putting the burden on the VA to show that the examiner *is* qualified—making the rule an anomaly in the "uniquely pro-claimant" adjudicatory system for veterans benefits, in which "any ambiguities" in the evidence are to be resolved in the veteran's favor, *Harris v. Shinseki*, 704 F.3d 946, 948-49 (Fed. Cir. 2013).

This Court first articulated the presumption of competency approximately a decade ago in *Rizzo*. *Rizzo* "adopt[ed] the reasoning" of *Cox v. Nicholson*, 20 Vet. App. 563 (2007), which had asserted—without any substantive analysis—that "the Board is entitled to assume the competence of a VA examiner." *Rizzo*, 580 F.3d at

6

1290-91 (quoting *Cox*, 20 Vet. App. at 569).  As the conceptual basis for the

presumption, the *Rizzo* Court relied on the presumption of regularity, which

"provides that, in the absence of clear evidence to the contrary, the court will

presume that public officers have properly discharged their official duties."  *Id.* at

1292 (quoting *Miley*, 366 F.3d at 1347).  This Court has developed the

presumption of competency in a line of cases, most recently in *Mathis*, which

reaffirmed that the VA "benefits from a presumption" that its chosen medical

examiners are qualified to give opinions in any particular case.  643 F. App'x at

971-72.

　　While the *Mathis* panel followed the presumption of competency as a matter

of Circuit precedent, it expressed serious reservations about the doctrine's

continuing viability.  The Court noted that the presumption of regularity typically

applies only to "ministerial, routine, and non-discretionary" actions.  *Id.* at 973-74.

But "[n]owhere in the *Rizzo* line of cases … did either the [CAVC] or this court

perform an analysis to verify that the procedures attending the selection and

assignment of VA examiners are, in fact, regular, reliable, and consistent."  *Id.* at

974; *see also id.* at 975 (Reyna, J., concurring) ("[I]t was unprecedented to apply

the presumption of regularity to a process such as determining whether a nurse is

qualified to provide an opinion on a particular issue.").  The Court should take the

next step and hear this case en banc to overturn this problematic precedent.

**II.    THE COURT SHOULD TAKE THIS CASE EN BANC TO OVERRULE *RIZZO* AND DISAVOW THE PRESUMPTION OF COMPETENCY.**

**A.    The presumption of competency is illegitimate because it lacks any statutory or regulatory basis.**

The first problem with the presumption of competency is that the CAVC and this Court lacked the authority to create it in the first place.

**1.**    Under 38 U.S.C. § 7292, this Court's jurisdictional authority in the veterans-benefits context is limited to interpreting the Constitution, congressional statutes, and agency regulations.  *Id.* § 7292(c), (d).  But the *Rizzo* Court did not even purport to rely on a statute or regulation in adopting the presumption; instead, the Court simply created it out of whole cloth.  *See Mathis*, 137 S. Ct. at 1995 (Gorsuch, J., dissenting from denial of certiorari) (presumption "enjoys no apparent provenance in the relevant statutes," which "impose[] on the VA an affirmative duty to assist—not impair—veterans seeking evidence for their disability claims").  The task of fashioning such presumptions belongs to Congress, not this Court.

Indeed, Congress knows how to create presumptions for application in veterans-benefits adjudicatory proceedings; it has already done so, in numerous places throughout Title 38 of the U.S. Code.  *See, e.g.*, 38 U.S.C. § 1111 (establishing presumption that wartime veterans were "in sound condition when examined, accepted, and enrolled for service"); *id.* § 1112 (establishing

presumption that certain diseases and disabilities in wartime veterans are related to service); *id.* § 1116 (establishing presumption of service connection for wartime veterans for diseases associated with exposure to certain herbicide elements); *id.* § 1132 (establishing presumption that peacetime veterans were in sound condition when enrolled for service); *id.* § 1133 (establishing presumption that certain diseases and disabilities in peacetime veterans are related to service); *id.* § 1153 (establishing presumption that preexisting injury or disease has "been aggravated by active military, naval, or air service, where there is an increase in disability during such service"). Notably, *all* these statutory presumptions favor *the claimant over the VA*. Not a single one favors *the VA over the claimant*, as the presumption of competency does. The presumption of competency is thus not only untethered to any applicable statute or regulation; it is inconsistent with the entire statutory regime applicable to veterans benefits.

The Supreme Court's decision in *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79 (1994), is instructive and demonstrates why the court-created presumption of competency is illegitimate. In *O'Melveny*, the FDIC had argued that a federal statute governing FDIC receiver actions, FIRREA, authorized federal courts to create a specific right of the FDIC receiver as a matter of "federal common law"— a right that the receiver would not have had under the otherwise applicable state law. The Court held that this argument was "demolished" by the fact that various

9

provisions of the FIRREA *did* "specifically create special federal rules of decision regarding claims by, and defenses against, the FDIC as receiver"—and yet no provision established the specific right for which the FDIC was advocating. *Id.* at 86. Relying on the maxim "*[i]nclusio unius, exclusion alterius*" (i.e., the inclusion of one is the exclusion of another), the Court found it "hard to avoid the conclusion" that FIRREA required the FDIC "to work out its claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise." *Id.* at 86-87. "To create additional 'federal common-law' exceptions," the Court stated, "is not to 'supplement' this scheme, but to alter it." *Id.* at 87.

A similar conclusion is appropriate here. Congress knew how to create presumptions for application in veterans-benefits adjudications, and it did so in several instances in the detailed statutory framework of Title 38. This leads inescapably to the inference that Congress did not intend courts to create *other* presumptions as a matter of federal common law—particularly ones like the *Rizzo* presumption that (unlike every presumption found in the statute) *disfavor the veteran*. *See id.*

**2.**    This Court's creation of the *Rizzo* presumption was *ultra vires* for an additional, independent reason. Under § 7292, this Court lacks jurisdiction to make factual findings in the first instance. *See* 38 U.S.C. § 7292(d)(2). The same limitation applies to the CAVC. *See* 38 U.S.C. § 7261(c). But the presumption of

competency is an application of the presumption of regularity, and the application

of *that* presumption depends on the factual predicate that the process to which the

presumption applies is routine and reliable. *See Mathis*, 643 F. App'x at 973 ("The

presumption of regularity … has at its root a showing that the result was the

product of a consistent, reliable procedure.") (alterations, citation, and quotation

marks omitted). Neither this Court nor the CAVC possessed jurisdiction to

establish that factual predicate. Accordingly, "creating a presumption of

competence for VA examiners was outside the [CAVC's] jurisdiction, and so this

Court should not have upheld the [CAVC's] creation of one in *Rizzo*." *Id.* at 982

(Reyna, J., concurring); *see also Kyhn v. Shinseki*, 716 F.3d 572, 577-78 (Fed. Cir.

2013) (holding that CAVC erred in holding that presumption of regularity applies

to VA's provision of notice of VA examinations because that holding depended on

factual findings that the CAVC lacked jurisdiction to make).

### B.     The presumption of competency is conceptually unsound.

Even if this Court had the statutory authority to adopt the presumption of

competency—and it did not—it still should reject the presumption as logically

unsound, for two reasons. *First*, the presumption of competency is an application

of the presumption of regularity, which, as explained above, depends on the factual

predicate that the process in question is routine and reliable. That factual predicate

is lacking in this case. *Second*, the presumption is inconsistent with the bedrock

principle of adjudication that the burden of proof with respect to a given fact should fall on the party best situated to adduce evidence of that fact.

**1.**     As this Court has recognized, a "presumption should be predicated on evidence that gives us confidence that a particular procedure is carried out properly and yields reliable results in the ordinary course." *Mathis*, 643 F. App'x at 973. But there is absolutely no evidentiary support for the proposition that the VA selection process for medical examiners meets this requirement—and significant evidence suggests that it does not.

As a general matter, "the Board remands almost half (47% in 2015) of disability compensation appeals back to the regional offices," *Mathis*, 834 F.3d at 1356 (Reyna, J., dissenting from denial of rehearing en banc)—meaning the VA gets disability determinations wrong in the first instance approximately *half the time*. And there is no evidence that the VA fares any better in the specific context of selecting medical evaluators. For example, with respect to one common type of claim—traumatic brain injuries—the VA has admitted that over 24,000 veterans have received examinations from unqualified examiners. *Id.* at 1356 n.5. This is particularly noteworthy given that VA guidelines *explicitly require* that veterans with traumatic brain injuries be examined by certain types of specialist physicians. *Id.* The VA even requires that these evaluators indicate their medical specialty in their reports. *See* VA Manual M21-1 § III.iv.3.D.2.b. If the VA cannot reliably

12

select competent examiners in the traumatic-brain-injury context—notwithstanding this clear guidance regarding the examiners' required qualifications—it blinks reality to assume the agency does any better in the mine-run of cases where there is essentially no selection protocol and where examiners need not specifically state their credentials in their reports.

Moreover, the presumption of regularity historically has been applied only to non-discretionary and "ministerial" agency actions; it "does not attach to every action taken by a public agency." *Echevarria-North v. Shinseki*, 437 F. App'x 941, 946 (Fed. Cir. 2011); *see also Miley*, 366 F.3d at 1347 ("presumption of regularity" can be used "to establish … that certain ministerial steps were taken in accordance with the requirements of law"). The "process by which medical examiners are selected to provide expert opinions on medical issues" is "far from a routine, ministerial procedure." *Mathis*, 834 F.3d at 1355 (Reyna, J., dissenting from denial of rehearing en banc). Indeed, the VA has near-total discretion regarding its choice of a medical examiner in any given case. *See* VA Manual M21-1 § III.iv.3.A.6.d ("The choice of examiners is up to the VA medical facility conducting the examination, unless the BVA remand specifies that the examination must be conducted by a Board-certified specialist ….") (emphasis omitted). This is not the sort of the procedure for which the presumption of regularity is appropriate.

**2.**     The "general rule" is that "where evidence required to prove a fact is peculiarly within the knowledge and competence of one of the parties, fairness requires that party to bear the burden of coming forward." *Barrett v. Nicholson*, 466 F.3d 1038, 1042 (Fed. Cir. 2006) (quoting *Jensen v. Brown*, 19 F.3d 1413, 1417 (Fed. Cir. 1994)).  On this logic, the presumption of competency gets things exactly backwards.  The VA plainly has superior access to information regarding the qualifications of its own examiners.  On the other hand, veterans seeking disability compensation—many of whom suffer "from very significant psychiatric and physical disabilities," *Dixon v. Shinseki*, 741 F.3d 1367, 1376 (Fed. Cir. 2014)—are ill equipped to gather the evidence necessary to overcome the presumption.

### C.    The presumption of competency is inconsistent with the pro-claimant nature of the VA adjudicatory system.

The presumption of competency stands as a glaring anomaly in the system of veterans-benefits adjudication.  "Congress' intent in crafting the veterans benefits system [was] to award entitlements to a special class of citizens, those who risked harm to serve and defend their country," and consequently, the "entire scheme is imbued with special beneficence from a grateful sovereign." *Barrett*, 466 F.3d at 1044 (quotation marks and citation omitted).  By design, the system favors the veteran at every turn.  *See Harris*, 704 F.3d at 948 (discussing "the uniquely pro-claimant character of the veterans' benefits system" and noting that

14

the VA must "fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits").

Three examples illustrate the point. *First*, as described above, the VA has a duty "to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for a benefit under a law administered by the Secretary." 38 U.S.C. § 5103A(a). Thus, by statute, the VA's interest is not in "winning," but in ensuring that veterans receive the benefits to which they are entitled under the law. *Second*, the statute establishes a "benefit-of-the-doubt rule," which means that, "[w]hen there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant." 38 U.S.C. § 5107(b). *Third*, the Supreme Court and this Court have long held that statutes benefitting veterans must "be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation." *Boone v. Lightner*, 319 U.S. 561, 575 (1943); *accord Kirkendall v. Dep't of Army*, 479 F.3d 830, 843 (Fed. Cir. 2007) (en banc).

The presumption of competency is inconsistent with the VA's duty to assist, with the benefit-of-the-doubt rule, and with the pro-veteran canon of statutory construction. As Justice Gorsuch has explained, the presumption in fact *impairs* veterans in their efforts to obtain disability compensation:

[C]onsider how the presumption works in practice.  The VA usually refuses to supply information that might allow a veteran to challenge the presumption without an order from the Board of Veterans' Appeals.  And that Board often won't issue an order unless the veteran can first supply a specific reason for thinking the examiner incompetent….  [H]ow is it that an administrative agency may manufacture for itself or win from the courts a regime that … does nothing to assist, and much to impair, the interests of those the law says the agency is supposed to serve?

137 S. Ct. at 1995; *see also Mathis*, 834 F.3d at 1358-59 (Reyna, J., dissenting from denial of rehearing en banc) ("Denying veterans information about the qualifications of their examiners denies them both the assistance necessary to make their claims and their due process rights in making those claims.").  Moreover, the presumption effectively gives the benefit of any doubt with respect to medical examiners' qualifications to the VA, not to the veteran, in direct contravention of the mandate of § 5107(b).  And finally, the presumption violates the pro-veteran canon of statutory construction, since it in fact operates to *disfavor* a veteran seeking disability compensation.

\* \* \*

The presumption of competency is illegitimate, conceptually unsound, and inconsistent with the veterans-benefits statute.  It was so when it was adopted by this Court in 2009, and it remains so today.  And as long as the presumption remains in effect, it threatens to deprive thousands of veterans of the disability

benefits to which they are entitled.  En banc hearing is warranted so that the Court may correct this injustice.

## CONCLUSION

The petition for hearing en banc should be granted, the presumption of competency should be discarded, and this case should be remanded so that the Board may evaluate Mr. Francway's claims under the correct legal standard.

Dated:  October 3, 2018                    Respectfully submitted,


 /s/ *Michael E. Joffre*
Michael E. Joffre
William H. Milliken
STERNE, KESSLER, GOLDSTEIN
 & FOX P.L.L.C.
1100 New York Avenue NW
Washington, DC 20005
Tel:  (202) 371-2600
Fax:  (202) 371-2540
mjoffre@sternekessler.com
wmilliken@sternekessler.com

*Attorneys for Appellant*
*Ernest L. Francway, Jr.*

17

# ADDENDUM

*Designated for electronic publication only*

## UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No.  16-3738

ERNEST L. FRANCWAY, JR., APPELLANT,

V.

DAVID J. SHULKIN, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before MEREDITH, *Judge*.

### MEMORANDUM DECISION

*Note: Pursuant to U.S. Vet. App. R. 30(a),*
*this action may not be cited as precedent.*

MEREDITH, *Judge*: The appellant, Ernest L. Francway, Jr., through counsel appeals an October 13, 2016, Board of Veterans' Appeals (Board) decision that denied entitlement to disability compensation for a low back disability. Record (R.) at 1-16. This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). Single-judge disposition is appropriate. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990). For the following reasons, the Court will affirm the Board's October 13, 2016, decision.

## I. BACKGROUND

The appellant served on active duty in the U.S. Navy from August 1968 to May 1970. R. at 213. Service treatment records show that the appellant received medical treatment during service, including for back pain. In November 1969, the appellant was seen for a painful, swollen wrist, following a motorcycle accident. R. at 91. On December 9, 1969, the appellant was seen for low back pain on the right side; he was given medication for pain relief, instructed to treat his back with warm soaks, and asked to return to sick call later that morning. *Id.* Later that day, the appellant returned with the same complaint of low back pain, and examination revealed limited range of motion without pain, no deformity, negative test for fracture, and some pain on rotation. *Id.* On

December 10, 1969, the appellant was seen again for low back pain, and he reported that symptoms first began on November 19 when he was involved in a motor vehicle accident and that the "present episode" began on December 8. R. at 92. Examination revealed symptoms at L5-S1 without radiation and on the right sacroiliac joint, and the appellant was placed on light duty. *Id.*

A March 1978 report of medical examination for the U.S. Naval Reserve revealed a normal back. R. at 94-95. In a contemporaneous report of medical history, the appellant reported that he was in good condition and denied currently having or having had any recurrent back pain, but he disclosed currently having or having had "[s]wollen or painful joints" and a "'[t]rick' or locked knee." R. at 96-97. He also reported that he had been hospitalized after a motorcycle accident in 1976 for surgical removal of cartilage from his left knee and a bone fragment from his right shoulder. R. at 97.

A March 1995 non-VA medical record reflects the appellant's complaint of back pain which started after he lifted weights. R. at 2078.

An October 2002 VA treatment record reflects the appellant's complaint of arthritis in his shoulders and hands and his denial of any other physical complaints. R. at 1989-90. The record also noted the 1976 motor vehicle accident that resulted in a left ankle sprain and surgical repair of a right shoulder injury as well as a left knee injury. R. at 1989.

In April 2003, the appellant filed multiple claims for VA benefits, including entitlement to disability compensation for a "back injury on [his] left side dated 5/69. . . . [sustained o]n the U.S.S. Oriskany." R. at 1995. In May 2003, a VA regional office (RO), among other things, denied entitlement to disability compensation for a back condition. R. at 1927-29. In June 2003, the appellant filed a request "to reopen" his prior claims, including for a back condition. R. at 1921. In January 2004, the RO "confirmed [the] previous decision" denying the appellant's claim. R. at 1883. The appellant timely perfected his appeal of the denial. R. at 1855-57 (Mar. 2004 Substantive Appeal), 1863-81 (Feb. 2004 Statement of the Case), 1882 (Feb. 2004 Notice of Disagreement).

In October 2005, the appellant testified at a hearing before the Board, during which he stated that he had injured his back on a flight deck when a gust of wind knocked him over and he fell onto the wheel chocks that he was carrying. R. at 1821. He explained that he fell onto the chocks and injured his abdomen, after which he was carried on a stretcher to sickbay where he stayed for a couple of weeks. *Id.* The appellant stated that he was diagnosed in service with a muscle strain and that he was also assigned to light duty for 3 months. R. at 1821-22. The appellant

denied receiving any treatment for his back after service until he got a muscle cramp in 2004, which was treated with muscle relaxants. R. at 1822. Before 2004, the appellant stated that he would treat his back pain by taking over-the-counter medication and sick leave. R. at 1823-24. In January 2006, the Board remanded the claim for further development. R. at 1800-05.

In May 2006, the appellant underwent a VA examination, during which the appellant reported that he had strained his back in 1969, which "took about three months to go away," after which he experienced intermittent back pain that "got worse" in 2004, when he was told that he may have arthritis. R. at 1617. The examiner, an orthopedist, diagnosed the appellant with lumbosacral strain, concluding that it is not likely that his current back symptoms are related to "a simple strain back in 1969, but rather a natural[ly] occurring phenomenon." *Id.* Contemporaneous diagnostic testing revealed "[m]inimal arthritis" of the lumbosacral spine. R. at 1618. In July 2007, the appellant underwent another VA examination with the same examiner, who diagnosed the appellant with lumbosacral strain with minimal arthritis and reiterated his opinion that this condition was not related to service. R. at 1582. In August 2007, the appellant sought medical treatment and disclosed that he had been rear-ended in a motor vehicle accident, after which he began to experience a stiff neck and headache. R. at 1351.

In May 2009, the Board denied the appellant's claim of entitlement to disability compensation for a low back disorder. R. at 1428-44. In September 2009, the appellant appealed the Board's decision to the Court. R. at 1113. In December 2010, the parties filed a joint motion for partial remand (JMPR), in which they agreed that "it did not appear that [the May 2006 and July 2007 VA] medical opinions provided an adequate rationale for a fully-informed decision by the Board" and that it was "unclear whether the Board properly considered the adequacy of . . . [these] examination reports." R. at 1155, 1158. Later that month, the Court granted the parties' motion. R. at 1115. In May 2011, the Board remanded the claim for further development. R. at 1073-79.

In December 2011, the same examiner who provided the May 2006 and July 2007 VA medical opinions, upon review of the claims file, diagnosed the appellant with spinal stenosis and opined that it was "less likely than not related to service but natural age progression." R. at 1051. In January 2012, a different examiner, a VA internist, reviewed the record and interviewed, but did not examine, the appellant. R. at 1026, 1029. She noted that neither the appellant's narrative of his in-service back injury nor his complaint of recurrent back pain after that injury was reflected

**Appx3**

in his service treatment records. R. at 1028. She also observed that the appellant had made "various orthopedic complaints (knee, shoulder) [in October 2002] but expressed no complaint of back pain" until 2005, when he claimed to have a history of chronic back pain, which she further observed was not noted in his VA treatment records or claims file. R. at 1028-29. Upon review of the record and interview of the appellant, the examiner diagnosed him with degenerative disk disease (DDD), opining that spinal stenosis and DDD are less likely than not related to "an acute back strain that occurred more than 30 years prior to his next back complaint and even further from the time of a diagnosis of spinal stenosis." R. at 1029.

In April 2012, the appellant underwent a VA examination by a physician's assistant. R. at 997-1010. The examiner noted the appellant's history of motor vehicle accidents, both prior to service in 1964 and after service in 1976, as well his denial of any back pain after those accidents. R. at 997. The appellant reported that he had low back pain in 1995 secondary to bending over to pick up a 10-pound weight. *Id*. He further stated that he has had chronic and constant low back pain since injuring his back in service but, as observed by the examiner, he did not report having received any medical treatment from the time of his discharge from service until 1995; he stated that his back pain was not formally addressed until 2004 when he received VA treatment for his back. R. at 998. The examiner opined:

> There are no medical records of evidence from 1970-2004 to establish a nexus therefore it would be less likely than not that the [appellant's] spinal stenosis is related to the injury he describes . . . . It would be more likely than not [that] his spinal stenosis is related to natural age progression with consideration [of] wear and tear throughout his life.

R. at 1009-10.

In January 2013, the appellant submitted a statement dated November 2012 from a person, G.P., whom he had known since the 1970s. R. at 960-61. G.P. stated that the appellant had told him he had injured his back in service, that he had "seen [the appellant] in some really bad pain," that the appellant had treated his back pain with over-the-counter medicine, and that the appellant has had back pain since G.P. has known him. R. at 960. In March 2013, the Board remanded the claim for further development, to include a directive that the appellant's claims file "should be reviewed by an appropriate medical specialist for an opinion," who, among other things, "should reconcile any opinion provided with the statements from the [appellant] and G.P. as to reported episodes of back pain since active service." R. at 958.

In September 2014, the appellant underwent another VA medical examination with the same examiner who provided the May 2006, July 2007, and December 2011 VA medical opinions. R. at 376-84. The examiner diagnosed the appellant with lumbosacral strain and spinal stenosis, concluding that "it is less likely that his current [spinal] stenosis is related to one eve[n]t over 40 years ago but rather natural age progression." R. at 377, 383-84.

In March 2015, a VA addendum opinion was provided by the same examiner who wrote the January 2012 VA opinion. R. at 347-48. After reviewing the appellant's claims file, VA treatment records, and the lay statement of G.P., the examiner opined:

> While it is possible that the [appellant] injured or developed disease in his spine after his military service, it's not possible to relate post-service conditions to the self-limited back strain documented in service without resorting to speculation. It is a rare service member or civilian who does not, at one time or another, experience a self-limited musculoskeletal back strain. However, one such event does not qualify as a chronic condition or cause spinal stenosis or any other disease. [G.P.'s] [] statement confirming back pain during the 1970s and thereafter is insufficient to establish the existence of an initial in-service condition that would cause the symptoms and findings occu[r]ring after the service.

R. at 347-48.

On October 13, 2016, the Board denied the appellant's claim for disability compensation for a low back disability. R. at 1-16. This appeal followed.

## II. ANALYSIS

The appellant argues, essentially, that the Board erred in (1) relying upon medical opinions that are inadequate and failed to substantially comply with the Board's prior remand directives, and (2) failing to provide adequate reasons or bases in support of its finding that lay statements by the appellant and G.P. carried less probative value than other evidence of record. Appellant's Brief (Br.) at 11-19; Reply Br. at 5-11. The Secretary contends that the Board properly relied upon adequate medical opinions, which substantially complied with prior remands, and that it provided sufficient reasons or bases in assigning less probative value to the lay statements of the appellant and G.P. Secretary's Br. at 8-24.

### A. Duty To Assist

"[O]nce the Secretary undertakes the effort to provide an examination [or opinion] when developing a service-connection claim, . . . he must provide an adequate one." *Barr v. Nicholson*, 21 Vet.App. 303, 311 (2007). A medical examination or opinion is adequate "where it is based

upon consideration of the veteran's prior medical history and examinations," *Stefl v. Nicholson*, 21 Vet.App. 120, 123 (2007), "describes the disability, if any, in sufficient detail so that the Board's 'evaluation of the claimed disability will be a fully informed one,'" *id.* (quoting *Ardison v. Brown*, 6 Vet.App. 405, 407 (1994)) (internal quotation marks omitted), and "sufficiently inform[s] the Board of a medical expert's judgment on a medical question and the essential rationale for that opinion," *Monzingo v. Shinseki*, 26 Vet.App. 97, 105 (2012) (per curiam). The law does not impose any reasons-or-bases requirements on medical examiners and the adequacy of medical reports must be based upon a reading of the report as a whole. *Id.* at 105-06.

Additionally, a remand by the Board or this Court "confers on the [appellant] . . . , as a matter of law, the right to compliance with the remand orders," and the Board errs when it fails to ensure compliance with the terms of such a remand. *Stegall v. West*, 11 Vet.App. 268, 271 (1998). Although the Secretary is required to comply with remand orders, it is substantial compliance, not strict compliance, that is required. *See Dyment v. West*, 13 Vet.App. 141, 146-47 (1999) (holding that there was no *Stegall* violation when the examiner made the ultimate determination required by the Board's remand, because such determination "more than substantially complied with the Board's remand order"), *aff'd sub nom. Dyment v. Principi*, 287 F.3d 1377 (Fed. Cir. 2002); *Evans v. West*, 12 Vet.App. 22, 31 (1998) (holding that remand was not warranted because the Secretary substantially complied with the Board's remand order).

The Board's determination of whether there was substantial compliance with a remand and "[w]hether a medical [examination] or opinion is adequate [are] finding[s] of fact, which the Court reviews under the 'clearly erroneous' standard." *D'Aries v. Peake*, 22 Vet.App. 97, 104 (2008) (per curiam); *see Gill v. Shinseki*, 26 Vet.App. 386, 391-92 (2013) (reviewing the Board's finding of substantial compliance for clear error), *aff'd per curiam sub nom. Gill v. McDonald*, 589 F. App'x 535 (Fed. Cir. 2015). A finding of fact is clearly erroneous when the Court, after reviewing the entire evidence, "is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990). As with any material issue of fact or law, the Board must provide a statement of the reasons or bases for its determination "adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court." *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *see* 38 U.S.C. § 7104(d)(1); *Gilbert*, 1 Vet.App. at 56-57.

The Board found that VA had satisfied its duty to assist. The Board concluded that the VA opinions it relied upon were adequate in all respects:

> The April 2012 examiner provided a complete rationale based upon a review of the claims file and a physical examination. The March 2015 examiner conducted an additional review of the claims file, including lay statements and medical records, and provided a detailed medical opinion based on the history and findings. The VA examiners provided detailed rationales and cited supporting data for their conclusions.

R. at 4-5. In addition, the Board determined that "the development ordered in the May 2011 and March 2013 remands has been completed, and no further action is necessary to comply with the remand directives" under *Stegall*, 11 Vet.App. at 271. R. at 3.

Ultimately, the Board denied the appellant's claim based, in part, on the opinions of the "April 2012 and March 2015 VA examiners [who] opined that the [appellant's] current low back disability is not likely related to service." R. at 11. The Board observed again that the opinions were supported by review of the appellant's claims file, specifically finding that their medical opinions were "competent and highly probative, and based on adequate rationales." *Id.* The Board further observed: "The April 2012 examiner found that it was unlikely that spinal stenosis is related to the [appellant's] described in-service injuries. The March 2015 examiner concluded that back strain in service does not qualify as a chronic condition and would not cause spinal stenosis." *Id.* Based upon the foregoing, the Board concluded that there was "no competent evidence of a medical nexus between the current low back disability and an incident of service." *Id.*

The appellant has submitted various arguments in support of his position that the April 2012 VA examination report and the March 2015 VA addendum opinion are each separately inadequate and that they failed to substantially comply with the Board's March 2013 remand. However, as shown above, the Board relied on these opinions collectively, not individually, to determine that VA had satisfied its duty to assist and to find "no competent evidence of a medical nexus between the current low back disability and an incident in service." R. at 11; *see* R. at 4-5.

The appellant first argues that the April 2012 VA examination report and the March 2015 VA addendum opinion are not supported by adequate rationales. With respect to the April 2012 VA examination, the appellant asserts that the opinion was not supported by an adequate rationale in compliance with "the terms of the prior remand in which the parties agreed that future medical examinations or opinions must *provide more clarity . . . and a more robust rationale* than a simple statement that a nexus is unlikely because a particular diagnosed back condition is a naturally

7

occurring phenomenon." Appellant's Br. at 13 (emphasis added); Reply Br. at 2. With respect to the March 2015 VA addendum, the appellant argues that the opinion "is nonsensical and unresponsive to the medical questions presented," Appellant's Br. at 14-15, and that "the . . . examiner's rationale did not make any sense," Reply Br. at 3. In particular, the appellant appears to take issue with the March 2015 examiner's rationale that (1) the appellant's in-service back strain does not qualify as a chronic condition or cause spinal stenosis or any other disease and (2) G.P.'s statements concerning the appellant's back pain are "insufficient to establish the existence" of a condition that would cause any current low back disability. Reply Br. at 3; *see* Appellant's Br. at 14-15.

The appellant's arguments that the VA medical opinions in question lacked sufficient rationale are not persuasive. Although the Board did not provide an extensive explanation for its finding that the examiners provided detailed rationales, the appellant provides no specific analysis in support of his general contention that the April 2012 examiner did not provide a robust rationale that complied with the terms of the JMPR. Appellant's Br. at 13. Without more, his argument amounts to a disagreement with the Board's assessment of the evidence, which is insufficient to demonstrate that the Board's findings were clearly erroneous. *See D'Aries*, 22 Vet.App. at 104. Similarly, with respect to the March 2015 VA opinion, it is clear from the Board's decision that the Board understood the basis for the examiner's negative nexus opinion—the appellant's in-service "self-limited back strain . . . . does not qualify as a chronic condition or cause spinal stenosis or any other disease" and G.P.'s "statement confirming back pain in the 1970[s] and thereafter is insufficient to establish the existence of an initial in-service condition that would cause the symptoms and findings occurring after service." R. at 10. The Board found that the examiner supported her conclusion with a "detailed rationale" and "data," R. at 5, and the Court finds that the appellant's arguments to the contrary amount to no more than a disagreement with the opinion as well as the Board's reliance upon it to find no evidence of a nexus between the appellant's current low back disability and an in-service incident. *See D'Aries*, 22 Vet.App. at 104.

The appellant next argues that the April 2012 examiner failed to consistently diagnose the appellant with lumbar strain or DDD and provide a nexus opinion for those disabilities, Appellant's Br. at 13; Reply Br. at 2, 7. However, the appellant fails to cite any legal authority supporting the argument that VA examiners must provide consistent diagnoses. Moreover, the Court is not convinced that any error in this regard is prejudicial in light of the Court's determination that the

Board did not err in relying on the March 2015 opinion that it is "not possible to relate post-service conditions to the self-limited back strain documented in service without resorting to speculation. . . . [because] one such event does not qualify as a chronic condition or cause spinal stenosis or any other disease," R. at 347-48.

Additionally, the appellant maintains that the April 2012 examiner could not have substantially complied with the March 2013 remand directive that the examiner address a January 2013 statement by G.P., because the examination predated G.P.'s statement. Appellant's Br. at 14. As a result, he contends that the opinion was "not based on all pertinent evidence" and lacks all probative value. Reply Br. at 3, 7-8. However, the Board's March 2013 remand was directed at obtaining a new opinion to address the appellant's and G.P.'s statements regarding episodes of back pain since service, *see* R. at 958, which the Board in the decision on appeal found was accomplished by the March 2015 VA addendum opinion. R. at 3; *see* R. at 5 (noting that the March 2015 examiner reviewed "lay statements"), 10 (noting that the examiner addressed the January 2013 statement). Moreover, the appellant fails to provide legal support for his contention that the April 2012 opinion would lack all probative value on this basis alone, especially considering that, as the Board noted, the appellant had directly reported to the examiner that he experienced chronic and constant low back pain since discharge. *See* R. at 998; *see also Monzingo*, 26 Vet.App. at 107 (noting, "even if a medical opinion is inadequate to decide a claim," it may be entitled to some probative weight "based upon the amount of information and analysis it contains").

Finally, the appellant asserts that the Board failed to ensure substantial compliance with the March 2013 remand directive that an opinion "should be [obtained] by an appropriate medical specialist" because the March 2015 examiner, a VA internist, is "not an appropriate medical specialist to provide an opinion on a back disorder like an orthopedic surgeon." Appellant's Br. at 14; Reply Br. at 6. Although the Board found substantial compliance with the March 2011 and March 2013 remands, R. at 3 (citing *Stegall*, 11 Vet.App. at 271), it did not specifically address whether the March 2015 examiner was an appropriate medical specialist.

Initially, the Court notes that "VA benefits from a presumption that it has properly chosen a person who is qualified to provide a medical opinion in a particular case," *Parks v. Shinseki*, 716 F.3d 581, 585 (Fed. Cir. 2013) (citing *Sickels v. Shinseki*, 643 F.3d 1362, 1366 (Fed. Cir. 2011)), and the appellant does not argue, nor does the record reflect, that he raised this issue below. Additionally, the appellant does not assert that the record itself reasonably raises some irregularity

in VA's selection process. *Cf. Wise v. Shinseki*, 26 Vet.App. 517, 525-27 (2014) (holding that the presumption of competence does not attach where the face of the examination report reveals some irregularity in the selection of the examiner). Thus, the Board was not required to provide a statement of reasons or bases establishing the medical examiner's competence before relying on her opinion. *See Rizzo v. Shinseki*, 580 F.3d 1288, 1291-92 (Fed. Cir. 2009) (holding that the Board is not required to affirmatively establish the competence of a medical examiner, unless the veteran raises the issue); *see also Parks*, 716 F.3d at 585-86 (holding that the appellant waived his right to rebut the presumption that a nurse practitioner selected by VA was competent because the appellant never challenged the examiner's competence before the Board).

However, even assuming the appellant is not precluded from raising this issue for the first time on appeal, the appellant fails to demonstrate prejudicial error because he fails to explain why an internal medicine specialist may not qualify as "an appropriate medical specialist," given the Board's broad and nonspecific request for an "appropriate medical specialist," and thus fails to explain how or why the March 2015 opinion does not substantially comply with the Board's request. *See Dyment*, 13 Vet.App. at 146-47; *see also D'Aries*, 22 Vet.App. at 104-05 (noting that *Stegall* requires substantial "not strict compliance," and affirming the Board's determination that obtaining an expert opinion from a neurologist substantially complied with VA's request for an opinion by an "'internal medicine specialist'").

For the reasons stated above, the Court is not persuaded by the appellant's arguments on appeal.[1] *Berger v. Brown*, 10 Vet.App. 166, 169 (1997) (the appellant "always bears the burden of persuasion"); *see Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table). The Court finds that the appellant's arguments are undeveloped or lacking support in legal authority and therefore do not satisfy his burden of persuasion on appeal to show Board error. *See Coker v. Nicholson*, 19 Vet.App. 439, 442 (2006) (per curiam) ("The Court requires that an appellant plead with some particularity the allegation of error so that the Court is able to review and assess the validity of the appellant's arguments."),

---

[1] The Court declines to address the appellant's additional arguments—raised for the first time in his reply brief—challenging the adequacy of the March 2015 examiner's opinion. *See* Reply Br. at 8. The Court has consistently discouraged parties from raising new arguments after the initial briefing. *See Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999) ("[I]mproper or late presentation of an issue or argument . . . ordinarily should not be considered."), *aff'g sub nom. Carbino v. Gober*, 10 Vet.App. 507, 511 (1997) (declining to review argument first raised in appellant's reply brief); *Untalan v. Nicholson*, 20 Vet.App. 467, 471 (2006); *Fugere v. Derwinski*, 1 Vet.App. 103, 105 (1990).

*vacated on other grounds sub nom. Coker v. Peake*, 310 F. App'x. 371 (Fed. Cir. 2008) (per curiam order); *see also Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006) (holding that the Court is unable to find error when arguments are undeveloped); U.S. VET. APP. R. 28(a)(5).

Additionally, the appellant has failed to meet his burden of demonstrating that the Board committed prejudicial error. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (holding that harmless-error analysis applies to the Court's review of Board decisions and that the burden is on the appellant to show that he suffered prejudice as a result of VA error); *see also Coker*, 19 Vet.App. at 442.

B. Evidentiary Findings

It is the Board's duty, as factfinder, to determine the credibility and weight to be given to the evidence. *Washington v. Nicholson*, 19 Vet.App. 362, 367-68 (2005); *Owens v. Brown*, 7 Vet.App. 429, 433 (1995) (holding that the Board is responsible for assessing the credibility and weight of evidence and that the Court may overturn the Board's decision only if it is clearly erroneous). This duty includes assessing the probative value of medical evidence. *See Nieves-Rodriguez v. Peake*, 22 Vet.App. 295, 302 (2008) ("Part of the Board's consideration of how much weight to assign [a medical opinion] is the foundation upon which the medical opinion is based."). As with any material issue of fact or law, the Board must provide a statement of the reasons or bases for its determination "adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court." *Allday*, 7 Vet.App. at 527; *see* 38 U.S.C. § 7104(d)(1); *Gilbert*, 1 Vet.App. at 56-57.

In its decision, the Board found the following:

> [T]he [appellant's] statements made in connection with a claim for VA compensation benefits [are] to be of lesser probative value than his more contemporaneous history, including medical records showing that he sought treatment for other complaints but did not report back pain and the absence of complaints or treatment for many years after service. The lay statement of G.P. regarding the [appellant's] complaints of back pain symptoms since the 1970's is likewise considered less probative than the contemporaneous medical records which indicate that the [appellant] denied recurrent back pain.

R. at 11-12.

The appellant argues that the Board provided insufficient reasons or bases for finding that the lay statements of the appellant and G.P. were outweighed by other evidence. Appellant's Br. at 17-18; Reply Br. at 9-10. Specifically, the appellant maintains that the Board "considered and rejected favorable evidence" from the appellant and G.P. and relied upon the "absence of medical

11

evidence of treatment or complaints of a back disorder since service . . . .[, although n]one of these factors relate in any way to the observations in the certified statement made by [G.P.]." Appellant's Br. at 17. The appellant also contends that "the Board did not cite to any other contemporaneous medical record in which [the appellant] denied recurrent back pain." Reply Br. at 9-10.

The Court is not persuaded by the appellant's arguments on appeal. *Berger*, 10 Vet.App. at 169; *see Hilkert*, 12 Vet.App. at 151. As shown above, the Board, in assigning the lay statements lesser probative value concerning continuity of symptomatology, did not "reject" the contested lay statements. Rather, the Board's analysis reflects that it deemed the appellant's statements less probative because the "more contemporaneous history, *including* medical records" did not reflect continuous complaints, reports, or treatment for back pain for many years after service. R. at 11 (emphasis added). *See Buchanan v. Nicholson*, 451 F.3d 1331, 1337 (Fed. Cir. 2006) (noting it was not ruling out that the Board may "weigh the absence of contemporaneous medical evidence against the lay evidence of record"). Additionally, the Board ascribed lesser probative value to G.P.'s statements concerning the appellant's back symptoms because contemporaneous medical records, i.e., the 1978 examination, showed that the appellant denied recurrent back pain after discharge from service. *See id*. The appellant cites no legal authority requiring the Board to cite to additional contemporaneous medical evidence, other than the March 1978 report of medical history and report of medical examination, in order to find G.P.'s statements of lower probative value. The Court finds that the reasons or bases provided by the Board are sufficient and clearly explain its findings. *See Allday*, 7 Vet.App. at 527; *see* 38 U.S.C. § 7104(d)(1); *Gilbert*, 1 Vet.App. at 56-57. Moreover, as maintained by the Secretary, the appellant's arguments amount to mere disagreement with how the Board weighed the evidence. Secretary's Br. at 23.

### III. CONCLUSION

After consideration of the parties' pleadings and a review of the record, the Board's October 13, 2016, decision is AFFIRMED.

DATED: February 6, 2018

Copies to:

 Sean A. Ravin, Esq.

VA General Counsel (027)

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on   October 3, 2018
by:

☐ U.S. Mail

☐ Fax

☐ Hand

☒ Electronic Means (by E-mail or CM/ECF)

| Michael E. Joffre | /s/ Michael E. Joffre |
|---|---|
| Name of Counsel | Signature of Counsel |

| | |
|---|---|
| Law Firm | Sterne, Kessler, Goldstein & Fox P.L.L.C. |
| Address | 1100 New York Avenue, NW |
| City, State, Zip | Washington, DC 20005 |
| Telephone Number | 202-772-8856 |
| Fax Number | 202-371-2540 |
| E-Mail Address | mjoffre@sternekessler.com |

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

Reset Fields

FORM 19. Certificate of Compliance With Rule 32(a)

Form 19<br>Rev. 12/16

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.  This brief complies with the type-volume limitation of Federal Rule of Federal Circuit Rule 32(a) or Federal Rule of Federal Circuit Rule 28.1.

☒  This brief contains  [*state the number of* ] 3886 _____ words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), or

☐  This brief uses a monospaced typeface and contains  [*state the number of* ] _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Federal Circuit Rule 28.1 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☒  This brief has been prepared in a proportionally spaced typeface using

[*state name and version of word processing program* ] Microsoft Word 2010 _____ in

[*state font size and name of type style* ]  14 point Times New Roman _____ , or

☐  This brief has been prepared in a monospaced typeface using

[*state name and version of word processing program* ] _____ with

[*state number of characters per inch and name of type style*] _____ .

/s/ Michael E. Joffre
_____
(Signature of Attorney)

Michael E. Joffre
_____
(Name of Attorney)

Appellant Ernest L. Francway, Jr.
_____
(State whether representing appellant, appellee, etc.)

Oct 3, 2018
_____
(Date)

[ Reset Fields ]